# General Electric Co. v. Camden Iron Works, Appellant.

*Contracts—Written contracts—Affidavits of defense—Rule for judgment—Oral evidence to contradict written contract.*

1. Where plaintiff declared upon a written contract and defendant filed an affidavit of defense, from which it appeared that the defense in part was rested upon an alleged oral agreement con-

tradictory of the written contract, and it was not averred that the alleged oral agreement was omitted from the written contract by fraud, accident or mistake, the affidavit was insufficient in so far as it rested upon the said alleged oral contract.

2. Plaintiff filed a statement of claim from which it appeared that by letter dated January 30, 1906, it offered to furnish defendant certain motors as specified therein, at a price of $822.00 each, further stating: "We can make shipment on the first of the above outfits in five months, and at the rate of two per week thereafter." At the top of the letter was stamped: "Terms cash thirty days from date of shipment." On October 1, 1906, defendant replied by letter accepting the proposal contained in plaintiff's letter, and further stating: "It is understood that you can make shipment of the first of these motors in five months from date and afterwards at the rate of two motors per week. We hope that you can arrange to somewhat anticipate this rate of delivery as the entire contract must be completed in two hundred days, or six months and twenty days, under penalty of twenty dollars per day." A formal order for the motors was enclosed with defendant's letter. This order contained the words: "Price for the lot $8,220.00 F. O. B. Schenectady, N. Y. Terms not specified," with a reference to the letters above referred to. It also contained the words: "Wanted one hundred days or less." Certain additional orders were made and filed and certain amounts paid on account, as to which there was no dispute. Defendant filed an affidavit of defense in which it alleged that there was an oral agreement by which plaintiff "was fully acquainted with the facts that these motors were being purchased for the purpose of completing a contract which the defendant had with the United States of America through Thomas Ryan, the Acting Secretary of the Interior"; that plaintiff "was fully advised of the terms of defendants contract," and then setting forth that said contract imposed upon defendant a liability of "the sum of twenty dollars per day occupied in excess of the time specified in" defendant's contract; the affidavit further alleged that on account of these contract provisions imposing a penalty upon the defendant if it failed to complete its contract with the Government by a specified time, that the plaintiff had orally "agreed that defendant should only be required to pay plaintiff for the motors its proportion of the moneys actually paid by the United States in accordance with the terms and conditions of payment provided" in defendant's contract, a copy of which it was alleged had been furnished to the plaintiff prior to the making of the contract in suit. The affidavit further alleged that defendant had made payments from time to time in accordance with this understanding which plaintiff had

accepted, and that a considerable sum of money was still retained by the United States Government pending the termination of the dispute with defendant, on account of delay in making deliveries under its contract, and that the cause of such delays, if there were any, was plaintiff's failure to deliver motors at the time provided by defendant's agreement with the plaintiff, as set out in the statement of claim. The affidavit concluded with the general averment that the plaintiff was chargeable with all of such delay and therefore would be under obligation to reimburse the defendant for all loss which might be occasioned therefrom. The affidavit did not aver that the alleged oral agreement was contemporaneous with the written contract, or that it was made to induce the defendant to enter into the same, or that it was omitted from the written agreement by reason of fraud, accident or mistake. It did not clearly or sufficiently aver that there was any delay in shipping the motors by the plaintiff, except as to seventy days' delay as to certain of the motors. A supplemental affidavit was filed, averring in addition that plaintiff had failed to supply certain parts of the machines, which omissions created a further delay of two weeks, and that certain parts were not interchangeable as required under the specifications. The specifications, however, did not require that said parts should be interchangeable. *Held,* upon a rule for judgment for want of a sufficient affidavit of defense, that the affidavit and supplemental affidavit were insufficient in so far as they attempted to set up an oral agreement modifying a written agreement, for the sale of goods, and insomuch as they attempted to charge plaintiff with penalties for delay by reason of certain parts being not interchangeable, and in so far as they attempted to charge plaintiff with any penalty over and above the period hereinbefore referred to as to which the delay was sufficiently shown. Judgment was therefore correctly entered by the lower court for plaintiff as. to all except the penalty of twenty dollars per day for eighty-eight days or $1,760.00, as to which the rule was discharged.

Argued Jan. 20, 1913. Appeal, No. 313, Jan. T., 1912, by defendant, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1911, No. 3152, making absolute a rule for judgment for want of a sufficient affidavit of defense as to a portion of plaintiff's claim in case of General Electric Company v. Camden Iron Works. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

The following opinion was filed by the court:

This is a rule to show cause why judgment should not be entered for want of sufficient affidavit of defense.

The claim of the plaintiff company is to recover from the defendant company the sum of $5,545.50, with interest as stated in the statement of plaintiff's claim, filed on the second day of June, 1912.

The plaintiff avers that the defendant company, about the first day of October, 1906, purchased from the plaintiff the electrical motors described in Exhibit A, attached to the plaintiff's statement, the said exhibit being dated June 30th, 1906, in which the plaintiff, replying to an inquiry of June 18th of the defendant, offered to furnish motors at $822 each, stating, "The above apparatus will conform to the specifications, and we are attaching our own descriptive specifications of the motor transformer and dimension print of the motor," concluding the proposition by saying, "We can make shipment on the first of the above outfits in five months, and at the rate of two per week thereafter." This proposition of date June 30th, 1906 (Exhibit A) contained at its head, "Terms cash thirty days from date of shipment." On the first day of October, 1906, the defendant company, referring to the proposition of June 30th, in a letter made a part of plaintiff's Exhibit A, said, "We herewith accept your proposal and hand you our formal order covering ten (10) I.-12 25 H.P., 600 R.P.M. form 'K' 220 volt, vertical shaft induction motors." In this acceptance the defendant states "Price for each complete equipment as above and in accordance with specifications No. 95 of the United States Government Geological Survey, eight hundred and twenty-two dollars ($822.00) or for complete ten (10) equipments as above eight thousand, two hundred and twenty dollars ($8,220.00) F. O. B. Schenectady, New York," further stating, "It is understood that you can make shipment of the first of these motors

in five (5) months from date, and afterwards at the rate of two motors per week. We hope that you can arrange to somewhat anticipate this rate of delivery as the entire contract must be completed in two hundred (200) days, or six months and twenty days, under penalty of twenty dollars per day." In the formal order of the defendant company to the plaintiff (Order No. 3912) it is stated, "Price for the lot $8,220.00 F. O. B. Schenectady, N. Y. Terms not specified. As per your proposal of June 20th, 1906. As per our letter of 10-1-06 herewith. Wanted 100 days or less."

It will be noted that in this letter of October 1st, 1906, and especially in the formal letter No. 3912, there is no reference made in any way to any oral understanding or agreement as to the terms of payment. Indeed, in the formal order signed for the Camden Iron Works by Erwin Graves, there is stated "Terms not specified," with a reference to the proposal of June 20th, 1906, and a further reference to defendant's letter of October 1st, 1906. On January 5th, 1907, the defendant ordered certain changes in panels in accordance with a letter of December 17, 1906, which states "This order is in addition to our order No. 3912, 10-1-06."

Exhibit C of plaintiff's statement is their bill for $7,524.79, being a balance after a credit of $1,763.75 and a further credit for four bills for articles purchased by plaintiff from the defendant, the further credit being $2,489.20, leaving a balance of $7,524.79, this statement or bill being dated June 30th, 1909.

Exhibit D of plaintiff's statement is a claim for the amount stated in the suit, $5,545.50, the difference from Exhibit C being additional bills of merchandise purchased by the plaintiff from the defendant.

To this claim for $5,545.50 with interest the defendant admitting the purchase on or about October 1st, 1906, of the ten electrical motors at the price claimed, viz, in the aggregate $8,220.00, the subsequent increase of $570.00 of the amount of the order because of a change

in the panel, the purchase of an additional motor for $975.00, the various other purchases set out in plaintiff's statement of claim and the correctness of the statement of the account dated December 31st, 1910, marked "Exhibit D," states, they refused and still continue to refuse payment of the $5,545.50, because of an alleged "oral agreement" with plaintiff (subsequently confirmed in part by the corrspondence set forth in Exhibit A of plaintiff's statement, which did not include all the terms of the alleged oral agreement), by which oral agreement the plaintiff "was fully acquainted with the facts that these motors, were being purchased for the purpose of completing a contract, which the defendant had with the United States of America through Thomas Ryan, the Acting Secretary of the Interior"; that plaintiff "was fully advised of the terms of defendant's contract," which contained Sections 33 and 34, as to "Deductions for failure to complete" and the matter of "Payments— Section 33," imposing upon the defendant a deduction of "the sum of twenty dollars per day occupied in excess of the time specified in Section 32 of defendant's contract with the government."

Defendant contends that "because of the existence of these contract provisions" of the defendant, and with the object of inducing defendant to place its order "with plaintiff," it orally "agreed that defendant should only be required to pay plaintiff for the motors its proportion of the moneys actually paid by the United States in accordance with the terms and conditions of payment provided" in defendant's contract, of which a copy had previously been furnished to plaintiff.

Defendant avers that in pursuance of this alleged oral agreement on June 10th, 1908, it forwarded to plaintiff "in fulfillment of the terms of said contract, and plaintiff accepted $1,763.75 in part payment of the amount due for delivery of the motors, that amount being plaintiff's proportioned share of the amount received by defendant from the United States on June 10th, 1908, viz,

$5,742.50, which was the amount of the original con-
tract of defendant, .......................$15,070.00
Less 25 per cent. withheld until final accept-
    ance, ................................   3,767.50
                                           _____

                                           $11,302.50
Less amount deducted as liquidated damages
    under paragraph 33 for 278 days' delay
  · from May 4th, 1907, to March 31st, 1908,
    at $20 per day, .......................   5,560.00
                                           _____

    Leaving a balance of ..................  $5,742.50
    Defendant set forth that these deductions of $9,327.50
were still retained by the United States pending the de-
termination of a dispute arising out of an alleged delay
in deliveries "under defendant's contract with the
United States." Defendant averred it "is now contend-
ing before the Department of the Interior that no liqui-
dated damages were properly chargeable under the con-
tract for said alleged delay," and that such delays as
actually occurred in defendant's shipment of motors to
the United States of America were directly and solely
due to the failure of plaintiff to deliver the motors at the
time provided for by the terms of defendant's original
agreement with plaintiff which "was subsequently con-
firmed in the acceptance of October 1st, 1906, of plain-
tiff's written specifications," set out in Exhibit A of
plaintiff's statement and that plaintiff "is directly
chargeable for all of such delays and would be under
obligations to reimburse defendant for any and all losses
resulting therefrom."
    It is very apparent, that these motors were furnished
under the written proposition of June 30th, 1906, which
stated the terms were, "Cash 30 days from date of ship-
ment" and that this order was not accepted until Oc-
tober 1st, 1906, when the "formal order" already re-
ferred to, was given, which recited: "Terms not speci-
fied"; "as per your proposal of June 30, 1906," and "as

per our letter of 10-1-06 herewith";—"Wanted 100 days or less."

The acceptance stated the delivery was for "$8,220.00. F. O. B. Schenectady, New York."

In all of these writings there is no reference to the alleged oral agreement, nor does the defendant set out specifically, when—that is the date—the oral agreement was made, who representing the corporations plaintiff and defendant made it, and that the persons making it, had the authority of the respective corporate bodies to make it. There is no explanation vouchsafed as to why there was no reference to the penalty for delay in the written agreements, that in the proposal of June 30th, 1906, and the acceptance three months later on October 1st, 1906; there is no reference to a penalty against the plaintiff for delays in delivery. There is in plaintiff's proposal a reference to the defendant's "inquiry" of "June 18th," which is answered by the proposal. It would almost seem that this defense is set up by the defendant because the plaintiff was "fully acquainted with the fact" that the defendant's order was from the United States and that the plaintiff was "fully advised of the terms of the defendant's contract with the United States" and therefore the alleged oral agreement was made by the plaintiff, to induce defendant to enter into the agreement.

Defendant does not aver a contemporaneous oral agreement, that is one made either on June 30th or October 1st, 1906, nor aver any date, save that it was "the original oral agreement."

Defendant does not satisfactorily show, that the omission of this alleged oral agreement was due to fraud, accident or mistake. There was surely no haste upon the part of the defendant in accepting the plaintiff's proposal of June 30th, 1906, furnished in answer to the defendant's inquiry made twelve days before, June 18th, 1906. The defendant must be assumed to have read the words—"Terms. Cash 30 days from date of shipment"

at the head of plaintiff's proposal of June 30th, 1906, and yet it is averred, that plaintiff agreed that it would wait until defendant was paid, that is, "Cash in 30 days from shipment" was [changed] to "Cash when defendant receives the money from the United States."

Defendant does not aver that prior to the letter of June 30th, 1906, that is at the time of the alleged oral agreement, the number of motors to be furnished, the price for each motor, and the time for delivery, had been mentioned between the parties. Defendant does not even recite the language of the inquiry of June 18th, 1906. Still, all of these were important parts of an actual contract. There is no definite allegation in the affidavit of defense, as to when the defendant shipped each motor to the United States. There is, however, an admission that the motors were "duly delivered." Plaintiff's contract was to be complete, when it delivered the motors F. O. B. Schenectady, New York. Indeed, the defendant states, that there was no delay upon its part for which the United States can properly charge it, and that it is now so contending before the Department of the Interior. It is not clearly shown by the defendant that there was any delay in the shipment of the motors by the defendant to the United States, or the exact dates, when they were respectively shipped, or how great the delay was. The allegation of conditions or facts showing plaintiff's responsibility for the delays is not specifically set out. It is the statement of a conclusion, not of premises, warranting the conclusion. Defendant does not state, when it received the motors, nor when it shipped and delivered them to the United States. Defendant surely should set forth the facts showing the plaintiff is chargeable and it must show the actual delays. There is no allegation that plaintiff knew the sum of $1,763.75 was any proportionate share of an amount of the defendant had received from the United States, and there is further no explanation as to why the defendant furnished the plaintiff in 1909 and 1910 with

$4,491.21, viz: the bills of merchandise, amounting to $2,727.49, in addition to the $1,763.75 alleged to be the proportionate amount of the plaintiff's share of the amount received from the United States.

In the supplemental order of January 5th, 1907, Exhibit B to plaintiff's statement, being Order No. 4491, there is the recital, "This order is an addition to our order No. 3912, 10-1-06" and no reference to any oral agreement prior to June 30th, 1906.

It would seem, that it would not necessarily follow, that the plaintiff is bound by defendant's liability for a penalty, because plaintiff was "acquainted" and "advised" of the defendant's liability under its contract with the United States. It would be natural and usual, if the plaintiff was to be bound by some undertaking of the defendant, that the details of such understanding should be included in the plaintiff's contract with defendant. The defendant may have assumed all the risks of delays, in consideration of its expected profit from the contract with the United States. It cannot reasonably be predicated from defendant's own undertaking, that the plaintiff assumed its risk. It is more reasonable, under all the facts, to conclude that even if there had been some oral agreement on a date not set forth by the defendant, that it was merged in the conditions of the formal written order. Here the "terms" of the written agreement, conflict with the alleged terms of the oral agreement.

It would seem, that the proposition of the plaintiff on June 30th, 1906, was to make the first shipment of the ten motors in five months from June 30th, 1906, or by November 30th, 1906, and "at the rate of two per week thereafter." The acceptance of the proposition and the giving of the "formal order" was on October 1st, 1906, so that the five months would be by March 1st, 1907, and the remaining nine motors would be deliverable by April 5th, 1907. From "Exhibit D" it would appear they were delivered by June 21st, 1907, but the defendant admits

the shipment was on June 14th, 1907, so that between April 5th and June 14th, 1907, there would be but seventy days' delay, which at twenty dollars per day would be $1,400.00.

In the supplemental affidavit of defense filed, defendant avers, the plaintiff "had neglected to supply certain set screws required for the motor bearings and also special wrenches and tools required for erecting the motors, together with necessary accessories for the controlling equipment in the absence of which, the motors could not be erected or operated," which omissions created a further delay of two weeks. In addition it was averred, that certain of the parts furnished by the plaintiff, were not interchangeable as required under the specifications, attached to the plaintiff's claim, which caused a further delay, until December 2d, 1907, and that it was not until March 31st, 1908, that the motors were tested and finally accepted by the United States making the two hundred and seventy-eight days' delay claimed by the United States, of which one hundred and ninety-four were on account of the "certain parts not being interchangeable." A careful examination of "the specifications" attached to the plaintiff's statement of claim fails to show any requirement, that certain of the parts should be interchangeable, and so far as tests are concerned, the defendant's acceptance states: That "under the Government contract it will be necessary for us to test one or two of these complete pump motor units at our works, before shipment." If, as defendant avers, the test of the motors was to be made at defendant's works, and if instead of so testing them before shipment, defendant accepted the motors and shipped them "to Garden City, Kansas, where under the contract with the Government defendant was required to deliver them," it would apparently show an acceptance of the motors after a neglect to test them, as "under the Government contract it was necessary for the defendant to test them before shipping them." The failure to find the require-

ment for "interchangeable parts" in the specifications attached to plaintiff's statement of claim, or to show how this fact delayed the completion of the erecting of the motors and the clear violation by the defendant of its undertaking with the United States in reference to testing before shipment, would in the opinion of the court show the fallacy of the defendant's contention as to the matters in the supplemental affidavit of defense.

A mere general averment, that delays were caused by the plaintiff's neglect, is insufficient; it must be shown how they were so caused.

On the whole case, after a careful consideration of the arguments of the rule for judgment for want of a sufficient affidavit of defense, and the later rule for judgment for the amount as to which the affidavit of defense and supplemental affidavit of defense are insufficient, to wit, for the sum "of $3,785.50 with interest from August 1st, 1907; the portions of the said affidavit and supplemental affidavit of defense which are insufficient, being so much thereof as attempts to set up an oral agreement modifying the agreement for the sale of the goods sued for; so much thereof as attempts to charge against the plaintiff any penalty for delay by reason of the parts not being interchangeable; so much thereof which attempts to charge against the said plaintiff any penalty imposed by the Government over and above the delay of seventy-four days and the delay of two weeks set up in said affidavit, and so much thereof as attempts to charge the plaintiff with any portion of the sum of $3,767.50 alleged to be withheld by the Government until final acceptance of the apparatus," the court orders that the second rule for judgment shall be made absolute and that judgment shall be entered for the plaintiff for the amount of its claim, with interest as set forth in its statement, less the sum of $1,760 with interest, being for the eighty-eight days' penalty referred to in the plaintiff's second rule, as to which sum of $1,760.00 with interest, the rule for

judgment is discharged and the cause can be further proceeded with.

The court made absolute the rule as to a portion of plaintiff's claim.  Defendant appealed.

*Error assigned* was the action of the court making the rule absolute.

*R. Duane,* of *Duane, Morris & Heckscher,* for appellant.

*H. B. Gill,* with him *John R. Reed* and *W. B. Linn,* for appellee.

PER CURIAM, February 24, 1913:

We are not convinced that there was error in making absolute the rule for judgment for the amount as to which the affidavit of defense was insufficient and the order is affirmed.